# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-792

**STATE OF LOUISIANA**

**VERSUS**

**JEROME MONTRELL THOMAS**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 9039-07
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**John Foster DeRosier**
**District Attorney - 14TH Judicial District Court**
**Carla Sue Sigler**
**Assistant District Attorney - 14TH Judicial District Court**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**Telephone: (337) 437-3400**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**G. Paul Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**Telephone: (337) 237-2537**
**COUNSEL FOR:**
    **Defendant/Appellant - Jerome Montrell Thomas**

**THIBODEAUX, Chief Judge.**

Defendant, Jerome Montrell Thomas, was charged with attempted first degree murder, in violation of La.R.S. 14:27 and 14:30, and attempted armed robbery, in violation of La.R.S. 14:27 and 14:64. Defendant pled not guilty, but a jury found him guilty as charged. A bill of information charging Defendant as a habitual offender was filed. Defendant admitted the allegations in the bill of information and was subsequently sentenced to eighty years at hard labor on each count, to run concurrently.

Defendant asserts two assignments of error on appeal. He contends his conviction for attempted first degree murder is based on insufficient evidence because the witnesses could not reliably identify which of two defendants fired a shot at the victim. Additionally, the in-court identification of him for the first time at trial was unreliable because it was inconsistent with pre-trial testimony. For the foregoing reasons, we find that the evidence was sufficient to support Defendant's conviction for attempted first degree murder. We also find that Defendant waived review of any issues regarding the in-court identification made.

I.

**ISSUES**

We must decide whether:

(1)     The conviction in this case was based on insufficient evidence;

(2)     The in-court identification of Defendant at trial was unreliable.

## II.

## FACTS AND PROCEDURAL HISTORY

Nicholas Perioux was a manager at his father's restaurant, Pat's of Henderson. Perioux testified that D'Ryan Green was one of his best friends and attended a party at the restaurant on December 6, 2004. After the party, Green stayed to visit Perioux, who was closing the restaurant that night.

At approximately 11:00 p.m., Perioux placed Christmas gifts in his vehicle and returned to the restaurant. Perioux and Green then exited the restaurant together. While on the porch of the restaurant, two men appeared from behind the columns on the porch with guns pointed at Perioux and Green.

Perioux testified that one of the men was dressed in all black. The other man wore a white hat, and his clothes were lighter in color. When the men approached, Perioux told Green to run. Green hesitated, and the man in the white hat grabbed him in a headlock. Perioux testified that the man with the white hat had a gun in his other hand and was pointing it at him. The man in black also had a gun pointed at him.

Perioux, who was carrying a Glock .40 firearm for protection, retrieved his gun and shot at the man in black. Perioux testified that as soon as he shot the first round, shots were fired at him. Not long into the confrontation, the man dressed in black slipped, fell, and ran away. When the man in black was fleeing, Green got away from the man in the white hat. Perioux then started shooting at the man in the white hat, and that man shot back at him, hitting him. The man in the white hat fell backwards, then got up and ran. Perioux testified that he knew the man who was holding Green was wearing a white hat.

D'Ryan Green described the two men as African-American and taller than him. One of the men grabbed Green around the neck and put a gun to his head.

Green testified that he saw the man's face and he was black. Green made an in-court identification of Defendant as the man who grabbed him. Green testified that he made the positive identification based on seeing the man from "here to here."

Green testified that the man in the white hat put the gun to his head and cocked the hammer. Green further testified that he fell. As Green was falling, he felt a discharged bullet go by his head. Green then testified as follows: "I'm seeing bullets fly. I'm seeing the guy shoot again. I'm seeing Nick pull the gun out and start shooting. Hear him screaming; he fell; he got hit, and he continues to shoot."

Officer Lisa Leleaux was dispatched to the restaurant on the date of the offense. She observed a 9mm on the steps in front of the restaurant. Officer Leleaux also found a revolver on the ground by the steps on the north side of the restaurant and a white cap just at or below the steps. Officer Leleaux testified that the cap had a hole in it. After the cap was collected, Officer Leleaux noticed a small amount of blood and what appeared to be a part of a scalp inside the cap.

Officer Bob Fry testified about the guns found at the scene. He testified that the .357 magnum revolver contained cartridge casings when he received it and the gun functioned properly. The 9mm contained eight live rounds and functioned properly. Further, the Glock, which belonged to Perioux, functioned properly and did not contain any cartridges.

Dr. Thomas Reinecke, an emergency room physician, was qualified as an expert in emergency medicine. On December 6, 2004, Dr. Reinecke was practicing at Our Lady of the Lake Hospital in Baton Rouge. At approximately 2:00 a.m. on December 7, 2004, Dr. Reinecke treated a man named Jerome Thomas who said he was the victim of an assault. Thomas complained that he had been hit in the head with an unknown object while gunshots were being fired. Thomas suffered

either a blunt injury or a grazing gunshot wound five centimeters long. Thomas gave his date of birth as November 18, 1975.

Detective Gregory Single testified that he was contacted by the North Louisiana Crime Lab and informed there had been an initial hit in response to DNA evidence recovered at the scene. The crime lab informed Detective Single that the DNA matched that of Jerome Thomas. Defendant was apprehended in Baton Rouge.

Defendant's date of birth was listed on the *Miranda* rights form as November 18, 1975. Detective Single questioned Defendant about a scar on his head. Defendant stated he received the scar in December 2003, as he was pistol-whipped during an altercation in Baton Rouge. Detective Single then received consent to obtain Defendant's medical records. Our Lady of the Lake Hospital had no record of Defendant being treated in December 2003. He was treated in December 2004, however. A DNA sample was subsequently taken from Defendant, and the DNA results confirmed Defendant's presence at the scene of the crime. Nevertheless, Defendant denied any involvement in the offenses.

Mary Dukes, a forensic DNA analyst and Quality Manager at the North Louisiana Crime Lab, was qualified as an expert in forensic DNA testing. Dukes testified that Defendant's DNA matched that found on the white hat. Dukes further testified that the chances of obtaining the same match were 1 in 21.2 quadrillion.

III.

**ERROR PATENT**

One error patent exists concerning the habitual offender proceeding, but the error lacks reversible merit because Defendant received a fundamentally fair hearing.

4

The trial court erred in failing to advise Defendant of his right to remain silent. At the sentencing hearing, the State announced it was filing a habitual offender bill seeking to enhance the sentences on both of Defendant's September 8, 2009, convictions, as a third offender. The trial court then asked Defendant whether he wanted to admit or deny the allegations of the bill. Defendant stated "I admit." Defense counsel then told the court that he had explained to Defendant the nature of the habitual offender procedure. Defense counsel stated that he told Defendant "[the State had] to prove that it was a conviction, and it was a conviction, and it was Mr. Thomas who was, in fact, the person convicted and that the conviction ha[d] taken place within ten years from the date the prosecution or the sentence ends."

Defense counsel further stated that Defendant admitted that he was the perpetrator in both prior offenses and stipulated to the same. The court then questioned Defendant directly, and he confirmed his counsel's testimony.

In *State v. Fletcher*,[1] 00-968, pp. 3-4 (La.App. 3 Cir. 12/6/00), 776 So.2d 1240, 1243, *writ denied*, 01-342 (La. 12/14/01), 803 So.2d 986, this court discussed the pertinent case law on this issue:

> While La.R.S. 15:529.1 does not specifically address the issue of a defendant's right to remain silent, in *State v. Johnson*, 432 So.2d 815 (La.1983), *writ granted on other grounds*, 438 So.2d 1113 (La.1983), *appeal after remand*, 457 So.2d 1251 (La.App. 1 Cir. 1984), *appeal after remand*, 471 So.2d 1041 (La.App. 1 Cir. 1985), the supreme court concluded that the statute clearly recognizes that a defendant has the right to remain silent and thus implicitly provides that a defendant should be advised by the trial court of this right before he acknowledges or confesses his status as an habitual offender. Thus, the trial court erred in failing to advise the defendant of this right before accepting his admission that he was the person who was convicted of the predicate offenses. The question is whether or not this is harmless error.

---

[1] Though the writer dissented in *Fletcher*, the facts in this case are so apparently distinguishable that they do not require any explanatory analysis.

We concluded that it was.

We find Defendant in this case, like the defendant in *Fletcher,* received a fundamentally fair hearing. Defendant was represented by capable counsel who explained the habitual offender procedure to him, and Defendant admitted his prior offenses in the presence of his attorney after being informed that the State would have to prove his prior convictions and identify him as a habitual offender. Consequently, this error patent is harmless.

IV.

## LAW AND DISCUSSION

### Sufficiency of the Evidence and In-Court Identification

Defendant contends the conviction in this case is based on insufficient evidence, as the witnesses could not reliably identify which of two defendants fired a shot at the victim, and on improper in-court identification. Therefore, he argues that his conviction for attempted first degree murder should be vacated and set aside.

Defendant asserts the critical question is whether the State had enough information to establish that he fired the gunshot that hit Perioux. He contends that because of the confusion and rapid sequence of events, there is insufficient evidence to convict him of attempted first degree murder.

Defendant argues the two weapons found at the scene were never tied to a specific person, and the 9mm had not been fired. Defendant additionally asserts it is unclear which of the men wore the white hat. Furthermore, Perioux apparently told police the men were all in black, but denied that at trial. Defendant avers that Perioux admitted he had been told about the white hat being found and DNA tying it to Defendant. Thus, Perioux's in-court identification of Defendant as the person who fired the shots was highly doubtful. Defendant further contends that by the time

of trial, Perioux was able to "specifically identify the kind of gun being held by the only person arrested, through DNA, the white hat." Defendant asserts that this evidence is highly questionable, and his conviction for attempted first degree murder should be reversed.

In *State v. Boyance*, 05-1068 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, *writ denied*, 06-1285 (La. 11/22/06), 942 So.2d 553, the defendant asserted his convictions were based on insufficient evidence, particularly the witness' identification of him as the person who committed the robberies. He questioned the witness' identification because she allegedly told her son that the police identified the robber. The defendant asserted that this court had to determine whether there was a suggestive identification and if it presented a substantial likelihood of misidentification.

This court held:

> "A defendant who does not file a motion to suppress an identification, and who fails to contemporaneously object to the admission of the identification testimony at trial, fails to preserve the issue of its admissibility as an error on appeal." *State v. Johnson*, 95-711, pp. 3-4 (La.App. 3 Cir. 12/6/95), 664 So.2d 766, 769, *writ denied*, 96-0082 (La. 3/29/96), 670 So.2d 1236. *See also* La.Code Crim.P. arts. 703(F) and 841(A). The record reveals that the defendant did not file a pre-trial motion to suppress the witnesses' identifications or object to its admissibility at trial. Consequently, as the defendant failed to preserve this issue, we do not review it on appeal.

*Id*. at 440.

The State relies on *Boyance* and further contends that while a motion to suppress would not have been possible because of the in-court identification, Defendant did not contemporaneously object to it at trial. Thus, the error was not preserved for review.

In *State v. Brumfield*, 96-2667 (La. 10/20/98), 737 So.2d 660, *cert. denied*, 526 U.S. 1025, 119 S.Ct. 1267 (1999), the defendant contended that the court should not have admitted the testimony of the store manager who survived a shooting because her recollection of the crime and her identification of one of the assailants occurred only after she had been hypnotized by the police. At trial, there was no objection to the testimony or the identification. The supreme court found the defendant waived any claim based on the erroneous admission of this evidence.

Here, we find that Defendant waived review of the issue of improper in-court identification because he failed to contemporaneously object at trial. Further, even if Defendant had not waived his objection, the evidence in the record was sufficient to support the finding that he was the man who shot Perioux.

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville,* 448 So.2d 676, 678 (La.1984).

*State v. Draughn*, 05-1825, p. 7 (La. 1/17/07), 950 So.2d 583, 592, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007).

> When the key issue is not whether a crime occurred, but rather, the identity of the perpetrator, the state is required to negate any reasonable probability of misidentification. *State v. Hughes*, 05-992 (La. 11/29/06), 943 So.2d 1047. One witness's positive identification is sufficient to support a conviction. *Id.*

*State v. George*, 09-143, p. 5 (La.App. 3 Cir. 10/7/09), 19 So.3d 614, 618.

Perioux testified that the man in the white hat grabbed Green. Additionally, although Perioux testified on cross-examination that at the time of the events he did not know who shot him, he testified on direct examination that the man in the white hat fired at him, hitting him. Green identified Defendant as the man who

8

grabbed him. Further, as he was falling from the grasp of the man who grabbed him, he felt a discharged bullet go by his head and saw the man fire the gun again. DNA evidence indicated Defendant wore the white hat.

Although Perioux's testimony may be inconsistent, his testimony that Defendant shot him or shot at him was supported by Green's testimony. The jury made credibility determinations and found the witnesses' testimony to be credible despite any inconsistencies therein. It is not this court's function to reweigh the evidence or assess credibility. *State v. James*, 99-1858 (La.App. 3 Cir. 5/3/00), 761 So.2d 125, *writ denied*, 00-1595 (La. 3/23/01), 787 So.2d 1010. Accordingly, this assignment of error lacks merit.

## V.

## **CONCLUSION**

For the reasons explained above, we affirm Defendant's conviction and sentence.

**AFFIRMED.**