COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

VERSUS

KENNETH G. BILLINGSLEY


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 11114-08
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**********

**SHANNON J. GREMILLION**
**JUDGE**

**********

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


**John Foster DeRosier, District Attorney**
**Karen C. McLellan, Assistant District Attorney**
**Fourteenth Judicial District Court**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
       **State of Louisiana**

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **Kenneth G. Billingsley**

**Kenneth G. Billingsley**
**Louisiana State Penitentiary**
**Camp D - Falcon 1**
**Angola, LA 70712**
**PRO SE**

**GREMILLION, Judge.**

The State alleges that in the evening of April 9, 2008, Defendant, Kenneth G. Billingsley, and Brian Paul approached two women, Robin Decote and Stephanie Foreman, as they sat in a truck parked at the Goosport Recreation Center. Defendant put a gun to Ms. Foreman's head and demanded money. Ms. Foreman gave Defendant her purse, which contained approximately ninety dollars. At the same time, Brian Paul attempted to rob Ms. Decote with a gun. The two men then ran away.

Defendant was charged with armed robbery with the use of a firearm, violations of La.R.S. 14:64 and 14:64.3, and illegal possession of stolen firearm, a violation of La.R.S. 14:69.1. A jury found Defendant guilty as charged, and he was sentenced to serve seventy-five years imprisonment without the benefit of probation, parole, or suspension of sentence, to be served consecutively to a seven-year sentence on a probation violation.

On appeal, Defendant raises three assignments of error and one pro se assignment of error. He alleges that the evidence was insufficient to support the verdict, that the trial court erred when it permitted the introduction of irrelevant and prejudicial evidence, and that defense counsel rendered ineffective assistance.

We affirm.

## INSUFFICIENT EVIDENCE

Defendant argues he was never adequately linked to the crime because he was not positively identified by the victim as the robber and there was no physical evidence which established him as the perpetrator of the offense.

Louisiana Revised Statute 14:64 provides, in pertinent part:

A. Armed robbery is the taking of anything of value belonging to another from the person of another that is in the immediate control

of another, by use of force or intimidation, while armed with a dangerous weapon.

Louisiana Revised Statute 14:64.3, in pertinent part, provides:

> A. When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provision of R.S. 14:64.

In *State v. Freeman*, 01-997, p. 2 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580, this court discussed sufficiency of the evidence, as follows:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King,* 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, citing *State v. Richardson,* 425 So.2d 1228 (La.1983).

At trial, the following evidence was adduced:

On the evening of April 9, 2008, the victims were sitting in Ms. Decote's truck at the Goosport Recreation Center. They had just left work and Ms. Foreman wanted to smoke a cigarette before she was dropped off at home. As they were talking, they noticed a group in the playground of the recreation center, three men and a woman. Two of the men approached the truck and attempted to engage the two victims in small talk. Ms. Decote politely informed the men they were not interested in talking with them. The men, together with the other two people, left the playground.

2

However, within a few minutes the two men returned to the truck. Defendant approached the passenger side where Ms. Foreman sat, put a gun to her head, and demanded money. At the same time, the other robber, Mr. Paul, put a gun to Ms. Decote's head and demanded money. Ms. Foreman gave Defendant her purse, which contained about ninety dollars, and he ran off. Ms. Decote was able to convince Mr. Paul she did not have any money, and he ran off. Although Ms. Decote did not get a good look at the second robber, she saw a very distinctive tattoo across the back of his hand: "Eddie."

After the two men ran away, Ms. Decote and Ms. Foreman attempted to follow the second robber. While they did not find Mr. Paul, they came upon the two other persons who were in the park with Defendant and Mr. Paul. Ms. Decote got out of the truck and talked to the young man, got his name, and convinced him to let her take him home. During this time, Ms. Foreman called the police, and after they dropped the boy off, they returned to Goosport Recreation Center and met the police. They then went to the police station and gave statements.

Gregory Single, an investigator in the violent crimes division with the Lake Charles Police Department, was on duty the night of the robbery. He met with the victims and got the name of the young man Ms. Decote had taken home after the robbery. He went to the young man's house and spoke with him and his mother. The young man said he was in the playground with a man he only knew as "K.J." The boy and his mother provided the information which led to Defendant. Officer Single obtained Defendant's address and went to his house, which was just a few blocks from the recreation center. There, the officer was told by Defendant's mother that he was in bed, sleeping. However, she gave the officer permission to search the house. A search of Defendant's room located two old guns tucked behind a dresser and a gun under the mattress. The officer also found eighty-three

3

dollars tucked into a shoe in Defendant's bedroom. The next day, Ms. Foreman was shown a photographic lineup, and she positively identified Defendant as the man who held a gun to her head and took her purse the previous night.

Mr. Paul confessed to the police that he was the man who attempted to rob Ms. Decote, and he named Defendant as the one who robbed Ms. Foreman at gunpoint. However, at Defendant's trial, Mr. Paul adamantly insisted that he could not remember the person who was with him the night Ms. Decote and Ms. Foreman were robbed. He did not remember ever telling the police that Defendant was other robber. Mr. Paul had pled guilty to robbing Ms. Decote and was sentenced prior to Defendant's trial.

Finally, Sharonda Caldwell, Defendant's mother, testified. She stated that Defendant's nickname was "K.J.," short for Kenneth, Junior. She further stated that he had been out with his girlfriend, Jasmine Williams, the night of the robbery. She said the girlfriend dropped him off at home around ten o'clock that night and he had gone straight to bed.

These facts were sufficient for the jury to find Defendant guilty of armed robbery with the use of a firearm beyond a reasonable doubt. While Ms. Decote could not identify the man who robbed her friend, Ms. Foreman, she was able to identify the other robber via his distinctive tattoo. Mr. Paul confessed that he attempted to rob Ms. Decote and stated that Defendant was the man who robbed Mr. Foreman. Ms. Foreman testified she was certain of the identity of the man when she saw him in the photographic lineup. She stated she had no hesitation when she saw the picture. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Johnson*, 00-1552

4

(La.App. 5 Cir. 3/28/01) 783 So.2d 520, *writ denied*, 01-1190 (La. 3/22/02), 811 So.2d 921.

Furthermore, despite Mr. Paul's attempt to disassociate Defendant from the robbery by insisting he could not remember who the other robber was and Defendant's mother's attempt to give him an alibi, the jury rejected this testimony. The question of the credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. This court will not second-guess the credibility determinations beyond the sufficiency evaluations under the *Jackson* standard discussed above. *See also State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied,* 09-1955 (La. 6/25/10), 38 So.3d 352.

There is no merit to this assignment of error.

## INTRODUCTION OF GUNS

Defendant argues that it was error for the trial court to permit the State to introduce the three guns located in his bedroom, since none of the guns were established to be the weapon used in the robbery. Defendant asserts that the admission of the guns was "other crimes evidence" and, as such, was prohibited by La.Code Evid. art. 404(B), which provides in pertinent part:

> (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purpose, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

At trial, Ms. Foreman viewed the guns and stated that she did not recognize any of the guns as the gun used to rob her. Furthermore, Calela Peters,

Defendant's cousin, testified that two of the guns belonged to her mother, and that after Hurricane Rita destroyed her mother's house, she moved the guns to Defendant's mother's house. However, she did not remember where she put the guns. Defendant points to La.Code Evid. art. 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or waste of time." He argues that the introduction of the guns was not probative to the State's case in any respect but was highly prejudicial to his case. Finally, he argues that the trial court permitted Officer Single to testify to the fact that one of the guns was determined to have been stolen in 1997, even though the charge of possession of a stolen firearm had been severed from the charge at trial.

During cross-examination of the defense witness, Ms. Peters, the State asked if she knew if one of the guns her mother owned was purchased illegally. Defendant objected to this testimony. However, the trial court overruled the objection, noting that Defendant had put the witness on the stand to establish ownership of the guns and the question was within the realm of cross-examination.

Initially, we note that Defendant states in a footnote that "[a]lthough defense counsel did not object when the guns were admitted, she did object to the admission of other crimes evidence, thus preserving the issue for appeal." *State v. Thomas*, 10-792 (La.App. 3 Cir. 2/2/11), 54 So.3d 1268 [*writ denied*, 11/473 (La. 9/23/11), 69 So.3d 1157]." Defendant objected neither before nor during trial to the admission of the guns found in his room. Moreover, while Defendant filed a "Motion and Order to Suppress" Mr. Paul's testimony, there was nothing filed in the record that indicates Defendant objected to the admission of the guns as "other

6

crimes evidence." Unless objected to, irregularities at trial cannot be raised on appeal. Louisiana Code of Criminal Procedure Article 841(A) provides:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

Further, on appeal, an improper reference to other crimes evidence is subject to the harmless error rule. The question to be answered is "whether the verdict actually rendered in the case was surely unattributable to the error." *State v. Hollier,* 09-1084, p. 15 (La.App. 3 Cir. 4/7/10), 37 So.3d 466, 477, *writ denied*, 10-1037 (La. 12/10/10), 51 So.3d 722. As discussed above, the State established all the elements of the crime of armed robbery with a firearm beyond a reasonable doubt. The victim positively identified the man who robbed her at gun point. The jury heard the testimony of a both victims and the testimony of Mr. Paul who robbed Ms. Decote at the same time Defendant robbed Ms. Foreman. Ms. Foreman testified that none of the guns found in Defendant's room was the gun that he used to rob her. Furthermore, the jury heard the testimony of Ms. Peters, who claimed ownership of two of the guns. After hearing all this testimony, the jury convicted Defendant of the offense charged. Given the strength the state's case, we have no reason to conclude that the verdict was "surely attributable" to the admission of the guns found in Defendant's room.

This assignment fails.

**EXCESSIVE SENTENCE**

Defendant's habitual offender sentence imposed for the conviction of armed robbery with the use of a firearm has been vacated, and remanded to the trial court for resentencing in accordance with La.R.S. 15:529.1 and 14:64.3. *See State v.*

*Billingsley,* 11-1425 (La.App. 3 Cir. __/__/__), __ So.3d __. Thus, this assignment is moot.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he received ineffective assistance of counsel during trial. First, he argues that defense counsel was ineffective for failing to object to the admission of the guns found in Defendant's room the night of the robbery. Second, he argues that his counsel was ineffective for failing to call an alibi witness, who testified in the first trial that resulted in a hung jury.

Quoting *State v. Griffin*, 02-1703, pp. 8-9 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, *writ denied*, 03-809 (La. 11/7/03), 857 So.2d 515, this court in *State v. Collins*, 04-1441, pp. 4-5 (La.App. 3 Cir. 3/2/05), 896 So.2d 1265, 1270, *writ denied*, 05-1334 (La. 1/9/06), 918 So.2d 1040, noted:

> Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm,* 446 So.2d 729 (La.1984); *State v. Johnson,* 557 So.2d 1030 (La.App. 4 Cir.1990); *State v. Reed,* 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Ratcliff*, 416 So.2d 528 (La.1982); *State v. Garland,* 482 So.2d 133 (La.App. 4 Cir.1986); *State v. Landry,* 499 So.2d 1320 (La.App. 4 Cir.1986).
>
> The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller*, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland, supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant

if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La.App. 4 Cir.1992).

As for the assertion that defense counsel's performance was ineffective because she did not object to the admission of the guns into evidence, the record before this court is sufficient to determine whether defense counsel rendered ineffective assistance of counsel such that deprived Defendant of a fair trial. As noted in assignment of error number one above, if the admission of the guns was error, the error was harmless in that the verdict actually rendered in the case was surely unattributable to the error. "'Effective counsel' has been defined to mean 'not errorless counsel', and not counsel judged ineffective by hindsight, but counsel likely to render reasonably effective assistance. *State v. Ratcliff*, 416 So.2d 528, 531 (La.1982)(*quoting United States v. Fruge*, 495 F.2d 557, 558 (5 Cir.1974))." *State v. Antoine*, 00-564, p. 6 (La.App. 3 Cir. 12/6/00), 774 So.2d 353, 357.

In the current case, the State's evidence was strong, the victim identified the robber with certainty, and there was a confession by Mr. Paul that he was with Defendant when Defendant robbed Ms. Foreman using a gun. The jury also heard testimony that the guns located in his bedroom did not belong to Defendant and undoubtedly took that testimony into consideration when deliberating the verdict. Therefore, Defendant cannot show that there was a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

9

Likewise, we find the record is sufficient to resolve the issue of whether defense counsel's failure to subpoena Ms. Williams constituted ineffective assistance. Defendant's first trial, wherein Ms. Williams did testify, occurred in February 2010, and after the trial court declared a mistrial, a new trial was refixed for May 3, 2010. On March 1, 2010, Defendant sent a letter to the trial court which was entered into the record. In the letter, Defendant was asking for a bond reduction so he could get his GED while he was in jail awaiting the new trial. He stated, in pertinent part:

> I was working 2 jobs faithfully, and I also got my ex[-]girlfriend['s] cousin pregnant which would make my first child, and I really would like to be there at the hospital to see my first child come into the world, and I have faith that you could help me, my ex-girlfriend is the person saying I commited [sic] the crime, when really she's mad at me cause she found out I got her first cousin pregnant and she is locked up for 5 years, so how could they believe her.

The current trial eventually took place in September 2010. While in his letter, Defendant does not name his "ex-girlfriend," Ms. Williams was his girlfriend in February 2010, when she testified at his first trial. Defendant remained in jail after the mistrial so apparently he "got [his ex-girlfriend's] cousin pregnant" prior to the first trial. Defendant's statement about his ex-girlfriend, "so how could they believe her," indicated that by March 2011, Defendant's counsel clearly had reason to believe that Ms. Williams' testimony would no longer be helpful to his client's cause. Counsel's choice not to subpoena Ms. Williams was warranted by what we find on this subject in the record.

We find no merit in this assignment of error.

**DECREE**

Defendant's conviction for armed robbery with a firearm is affirmed.

**AFFIRMED**.

10