# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-11

**STATE OF LOUISIANA**

**VERSUS**

**KENNETH G. BILLINGSLEY**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 31468-10
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


John F. DeRosier
District Attorney
Karen C. McLellan
Assistant District Attorney
Post Office Box 3206
Lake Charles, LA   70602-3206
(337) 437-3400
COUNSEL FOR APPELLEE:
     State of Louisiana

Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, LA   70602-1641
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
     Kenneth G. Billingsley

**Kenneth G. Billingsley**
**Louisiana State Penitentiary**
**Camp D - Eagle 3**
**Angola, LA   70712**
**IN PROPER PERSON**

**AMY, Judge.**

The defendant in this case was convicted of armed robbery and armed robbery with a firearm, and subsequently adjudicated a second felony offender. A panel of this court affirmed the defendant's conviction and habitual offender determination, but vacated the defendant's sentence as indeterminate and remanded the matter for resentencing. The trial court resentenced the defendant to seventy years at hard labor as a habitual offender and imposed a five-year sentence for armed robbery with a firearm. Both sentences were to be served without benefit of probation, parole, or suspension of sentence and to be served consecutively to each other and to the defendant's sentence for a probation violation. The defendant appeals. For the following reasons, we affirm.

### Factual and Procedural Background

A jury found the defendant, Kenneth G. Billingsley, guilty of armed robbery, a violation of La.R.S. 14:64, and armed robbery with a firearm, a violation of La.R.S. 14:64.3. The facts of the defendant's crime were set forth in *State v. Billingsley*, 11-790, pp. 2-4 (La.App. 3 Cir. 3/14/12), 86 So.3d 865, 867-68 (*Billingsley I*), *writ denied*, 12-821 (La. 9/28/12), 98 So.3d 827:[1]

> On the evening of April 9, 2008, the victims were sitting in Ms. [Robin] Decote's[2] truck at the Goosport Recreation Center. They had just left work and Ms. [Stephanie] Foreman wanted to smoke a cigarette before she was dropped off at home. As they were talking, they noticed a group in the playground of the recreation center, three men and a woman. Two of the men approached the truck and attempted to engage the two victims in small talk. Ms. Decote politely informed the men they were not interested in talking with them. The men, together with the other two people, left the playground.

---

[1] For clarity, we have included in this opinion an identifier for each of the defendant's prior appeals, i.e., *Billingsley I, Billingsley II, Billingsley III*.

[2] Ms. Decote's name is also spelled as "Ducote" in the record.

However, within a few minutes the two men returned to the truck.  Defendant approached the passenger side where Ms. Foreman sat, put a gun to her head, and demanded money.  At the same time, the other robber, Mr. [Brian] Paul, put a gun to Ms. Decote's head and demanded money.  Ms. Foreman gave Defendant her purse, which contained about ninety dollars, and he ran off.  Ms. Decote was able to convince Mr. Paul she did not have any money, and he ran off.  Although Ms. Decote did not get a good look at the second robber, she saw a very distinctive tattoo across the back of his hand:  "Eddie."

After the two men ran away, Ms. Decote and Ms. Foreman attempted to follow the second robber.  While they did not find Mr. Paul, they came upon the two other persons who were in the park with Defendant and Mr. Paul.  Ms. Decote got out of the truck and talked to the young man, got his name, and convinced him to let her take him home.  During this time, Ms. Foreman called the police, and after they dropped the boy off, they returned to Goosport Recreation Center and met the police.  They then went to the police station and gave statements.

Gregory Single . . . with the Lake Charles Police Department, was on duty the night of the robbery.  He met with the victims and got the name of the young man Ms. Decote had taken home after the robbery.  He went to the young man's house and spoke with him and his mother.  The young man said he was in the playground with a man he only knew as "K.J."  The boy and his mother provided the information which led to Defendant.  Officer Single obtained Defendant's address and went to his house, which was just a few blocks from the recreation center.  There, the officer was told by Defendant's mother that he was in bed, sleeping.  However, she gave the officer permission to search the house.  A search of Defendant's room located two old guns tucked behind a dresser and a gun under the mattress.  The officer also found eighty-three dollars tucked into a shoe in Defendant's bedroom.  The next day, Ms. Foreman was shown a photographic lineup, and she positively identified Defendant as the man who held a gun to her head and took her purse the previous night.

Mr. Paul confessed to the police that he was the man who attempted to rob Ms. Decote, and he named Defendant as the one who robbed Ms. Foreman at gunpoint.  However, at Defendant's trial, Mr. Paul adamantly insisted that he could not remember the person who was with him the night Ms. Decote and Ms. Foreman were robbed.  He did not remember ever telling the police that Defendant was other robber.  Mr. Paul had pled guilty to robbing Ms. Decote and was sentenced prior to Defendant's trial.

Finally, Sharonda Caldwell, Defendant's mother, testified.  She stated that Defendant's nickname was "K.J.," short for Kenneth, Junior.  She further stated that he had been out with his girlfriend,

2

Jasmine Williams, the night of the robbery. She said the girlfriend dropped him off at home around ten o'clock that night and he had gone straight to bed.

Subsequent to his conviction for armed robbery and armed robbery with a firearm, the State instituted habitual offender proceedings against the defendant. The trial court adjudicated the defendant as a second felony offender and imposed a sentence of seventy-five years at hard labor, without the benefit of probation, parole, or suspension of sentence.

The defendant appealed. A panel of this court affirmed the defendant's underlying conviction in *Billingsley I*. However, in *State v. Billingsley*, 11-1425, p. 2 (La.App. 3 Cir. 3/14/12), 86 So.3d 872, 873 (*Billingsley II*), which addressed the defendant's habitual offender proceedings, the panel found that the "trial court failed to impose a separate five-year sentence to run consecutively to the habitual offender sentence, rendering Defendant's sentence indeterminate." The panel vacated the defendant's sentence and remanded the matter to the trial court for resentencing.

At the resentencing hearing, the trial court imposed a habitual offender sentence of seventy years at hard labor without benefit of probation, parole, or suspension of sentence. For the defendant's armed robbery with a firearm conviction, the trial court sentenced the defendant to five years at hard labor without benefit of probation, parole, or suspension of sentence, to be served consecutively to the defendant's habitual offender sentence and his probation violation.

The defendant appeals, asserting that his sentence is unconstitutionally excessive.[3]

**Discussion**

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all criminal appeals are reviewed for errors patent on the face of the record. Such a review was performed in *Billingsley II*, 86 So.3d 872, and we note no additional errors patent here.

*Excessive Sentence—Aggravating and Mitigating Factors*

The defendant asserts that his sentence is unconstitutionally excessive. As part of his argument, he contends that the trial court failed to consider the sentencing factors delineated in La.Code Crim.P. art. 894.1, including mitigating factors, and that the trial court improperly considered evidence of other crimes for which the defendant was charged but not convicted.

The defendant contends that the trial court inappropriately considered charges of armed robbery, armed robbery with a firearm, and possession of stolen goods that were dismissed before resentencing. A panel of this court discussed such considerations in *State v. J.S.*, 10-1233, p. 10 (La.App. 3 Cir. 5/11/11), 63 So.3d 1185, 1192, stating:

---

[3] The defendant filed a separate appeal under docket number 13-52, which was originally consolidated with the instant appeal. However, that appeal was dismissed on April 24, 2013. *See State v. Billingsley*, 13-52 (La.App. 3 Cir. 4/24/13), 110 So.3d 731 (unpublished opinion) (*Billingsley III*).

Further, in the instant appeal, the defendant requests that this court instruct the trial court to order that the defendant be given credit for time served pursuant to La.Code Crim.P. art. 880. We note that the defendant has neither assigned this request as error nor included any argument concerning this issue in his brief to this court. Accordingly, this court considers his request abandoned pursuant to Uniform Rules—Courts of Appeal, Rule 2.12-4. *See State v. Martin*, 11-32 (La.App. 3 Cir. 6/1/11), 66 So.3d 608, *writ denied*, 11-1441 (La. 12/16/11), 76 So.3d 1201. However, we observe that credit for time served pursuant to La.Code Crim.P. art. 880 occurs by operation of law. *State v. Carthan*, 99-512 (La.App. 3 Cir. 12/8/99), 765 So.2d 357, *writ denied*, 00-359 (La. 1/12/01), 778 So.2d 547.

4

When evaluating a defendant's criminal history, trial courts may consider evidence at sentencing that would otherwise be inadmissible at trial. *State v. Myles*, 94-217 (La. 6/3/94), 638 So.2d 218. The trial court may consider records of prior arrests, hearsay evidence of suspected criminal activity, conviction records, and evidence of uncharged offenses or offenses that were *nolle prossed*. *State v. Emerson*, 31,408 (La.App. 2 Cir. 12/9/98), 722 So.2d 373, *writ denied*, 99-1518 (La.10/15/99), 748 So.2d 470.

The evidence the defendant complains of consists of "offenses that were *nolle prossed*" and would therefore be appropriate for consideration by the trial court. We find no merit to this argument.

The defendant also contends that the trial court failed to adequately consider the aggravating and mitigating factors delineated in La.Code Crim.P. art. 894.1 and the mitigating circumstances that have arisen since his original sentencing.

A list of factors to be considered by the trial court in determining a defendant's sentence is delineated by La.Code Crim.P. art. 894.1. The trial court need not list every aggravating or mitigating circumstance as long as the record reflects that he adequately considered the factors contained in the article. *State v. Smith*, 433 So.2d 688 (La.1983). "The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation." *State v. Decuir*, 10-1112, p. 3 (La.App. 3 Cir. 4/6/11), 61 So.3d 782, 785 (quoting *State v. Scott*, 36,763 (La.App. 2 Cir. 1/29/03), 836 So.2d 1180). However, the trial court is not required to give any specific factor any particular weight at sentencing. *Id*.

Further, in cases where the trial court fails to comply with La.Code Civ.P. art. 894.1, remand is unnecessary where the record clearly shows an adequate factual basis for the sentence. *State v. Smith*, 34,325 (La.App. 2 Cir. 12/20/00), 775 So.2d 640. "The question is whether the record presented is sufficient to demonstrate that the trial court did not abuse its discretion." *Id.* at 642.

Although the transcript from the defendant's resentencing does not contain reference to the aggravating and mitigating factors delineated in Article 894.1, the record indicates that the trial court was present at both the defendant's first trial, which ended in a mistrial, and his second trial, at which he was found guilty of armed robbery and armed robbery with a firearm. Further, the trial court found that the defendant had violated his probation from an earlier conviction for possession of stolen property under $500 and that the defendant was a second felony habitual offender.

Additionally, at the defendant's original sentencing hearing, the trial court heard testimony from one of the police officers involved in the case, the victims, and the defendant's mother and uncle. The victims testified about the effect of the defendant's actions on their lives. Ms. Foreman testified that "[w]hat happened that day was the worst the worst [sic] day of my life." Of particular note, the victims testified that they had been contacted either by the defendant or by the defendant's "brother"[4] in what the State characterized as attempts to harass the victims. A copy of the defendant's letter contacting Ms. Decote was submitted into evidence. Further, the police officer involved in the case testified that the

---

[4] The defendant's mother testified that she had "no idea" who the victims "were talking about[,]" as the defendant was her only child. However, she could not say if the defendant had any siblings on his father's side.

defendant was listed as a suspect in thirteen offenses in the Lake Charles Police Department's computer system.

The defendant's uncle and mother also testified at the original sentencing hearing. The defendant's uncle observed that the defendant was only twenty-two years old at the time of his initial sentencing and asked for leniency. The defendant's mother echoed that sentiment, asking the court to be lenient on her only child. The defendant also argued that he intended to complete his G.E.D., had been attending self-improvement courses, including a course on anger management, and was attending church.

The trial court originally imposed a seventy-five-year hard-labor sentence, without benefit of probation, parole, or suspension of sentence. The trial court stated:

> The Court has considered the records of these proceedings. I don't have the benefit of a presentence report[,] but I had the benefit of going through the trial on two separate occasions. I have heard what the defendant's involvement was, his continual denial of same; and . . . any lesser sentence would deprecate the seriousness of the offense.

At the resentencing hearing, with regard to the defendant's habitual offender adjudication, the trial court imposed a seventy-year hard-labor sentence, without benefit of probation, parole, or suspension of sentence. For the defendant's conviction for armed robbery with a firearm, the trial court also imposed the separate five-year additional penalty, to be served without the benefit of probation, parole, or suspension of sentence and to be served consecutively to the defendant's habitual offender sentence and his previous sentence for a probation violation.

The record does not indicate that the trial court discussed the aggravating and mitigating factors contained in La.Code Crim.P. art. 894.1 at the resentencing

7

hearing. However, our review of the record, including the transcripts of both the original sentencing hearing and the resentencing hearing, reveals an adequate factual basis for the trial court's sentence. Accordingly, we find that the record presented is sufficient to demonstrate that the trial court did not abuse its discretion and that the trial court adequately considered the sentencing factors contained in La.Code Crim.P. art. 894.1. *See State v. Stipe*, 10-877 (La.App. 3 Cir. 3/9/11), 59 So.3d 480.

Further, we find no merit to the defendant's contention that the trial court did not place adequate weight on the accomplishments that the defendant has made since his original sentencing. The defendant contends that he has enrolled in a G.E.D. program, completed anger management and other self-improvement courses, and has participated in several religious activities, including a discipleship class. However, the trial court is not required to give specific matters any particular weight in fashioning a sentence. *Decuir*, 61 So.3d 782. We also note that the defendant participated in all of these programs after his arrest and incarceration.

Thus, we find no error on the part of the trial court concerning the evidence considered at sentencing and consideration of the sentencing guidelines.

*Excessive Sentence—Constitutionality*

The defendant also contends that his sentence is unconstitutionally excessive. In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so

grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court discussed the considerations an appellate court should take into account when reviewing excessive sentence claims, stating:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

The defendant was convicted of armed robbery and armed robbery with a firearm and was subsequently adjudicated a second felony habitual offender. Pursuant to La.R.S. 14:64(B), the potential sentence for armed robbery is imprisonment "at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence." Louisiana Revised Statutes 15:529.1(A) provides that:

Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:

(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.

Accordingly, the defendant's potential sentence was between 49 ½ years to 198 years at hard labor without the benefit of probation, parole, or suspension of sentence. *See State v. Carroll*, 41,001 (La.App. 2 Cir. 4/12/06), 926 So.2d 827, *writ denied*, 06-1470 (La. 12/15/06), 944 So.2d 1283. Further, pursuant to La.R.S. 14:64.3, the defendant was subject to a five-year additional penalty for his conviction for armed robbery with a firearm.[5]

Pursuant to the habitual offender determination, the trial court imposed a sentence of seventy years at hard labor without benefit of probation, parole, or suspension of sentence. The trial court also imposed the five-year additional penalty for armed robbery with a firearm, to run consecutively to the defendant's habitual offender sentence and his sentence in a probation revocation matter.

The defendant's sentence is well within the statutory sentencing range. We note that a sentence may violate the constitutional prohibition against excessive sentences even when it is within the statutory limits. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1. However, we find that the defendant's sentence is not

---

[5] Louisiana Revised Statutes 14:64.3(A) states that "[w]hen the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64."

unconstitutionally excessive. The record indicates that the defendant, a second-felony offender, held a gun to one victim's head while an accomplice did the same to the other victim. We also observe that sentences similar to the defendant's have been upheld for second-felony offenders convicted of armed robbery, even for youthful offenders. *See, e.g.*, *Carroll*, 926 So.2d 827.

Based on our review of the facts and circumstances of this case, we find that the defendant's sentence does not shock our sense of justice, nor is it grossly disproportionate to the severity of the offense. Accordingly, we find that the trial court did not abuse its discretion in fashioning the defendant's sentence.

This assignment of error is without merit.

## DECREE

For the foregoing reasons, the sentences of the defendant, Kenneth G. Billingsley, which were imposed on April 13, 2012, are affirmed.

**AFFIRMED.**